## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| HELPING HANDS HOME IMPROVEMENT, LLC, d/b/a HELPING HAND GENERAL CONTRACTING, LLC, as assignee of AKBAR ARAB, | ) ) ) ) ) | |
| | ) | **Case No. 3:21-cv-00008** |
| Plaintiff, | ) | **Judge Aleta A. Trauger** |
| | ) | |
| v. | ) | |
| | ) | |
| THE ERIE INSURANCE EXCHANGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the court are (1) the Motion to Exclude Expert Opinion Testimony (Doc. No. 49) filed by defendant The Erie Insurance Exchange ("Erie") and (2) the Motion to Exclude Expert Opinion Testimony (Doc. No. 51) filed by plaintiff Helping Hands Home Improvement, d/b/a Helping Hand General Contracting, LLC, as assignee of Akbar Arab ("Helping Hand"). For the reasons set forth herein, the defendant's motion will be granted in part and denied in part, and the plaintiff's motion will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Akbar Arab filed this action asserting breach of an insurance contract and diversity jurisdiction in January 2021. (Doc. No. 1.) The Third Amended Complaint, identifying Helping Hand as the assignee of Akbar Arab's insurance claim and substituting it as the plaintiff, was filed in April 2021. (Doc. No. 33.) According to the Amended Complaint, commercial buildings located in Smyrna, Tennessee, owned by Arab, sustained hail damage to their metal roofs ("the roofs") as a result of a natural hail storm that occurred on or about June 27, 2019. Helping Hand estimates that it will cost at least $1,407,786.75 to replace the roofs and related components. (*Id.* ¶ 34.) The

plaintiff asserted a claim based on a policy of insurance issued by Erie and in effect from April 2, 2019 to April 2, 2020 ("policy coverage period") that covered the buildings for hail damage to their roofs and other structures. Erie denied the claim on the basis that the plaintiff failed to establish that there was a storm during the policy coverage period that resulted in the damages to the plaintiff's property and, in any event, that no functional damage to the roofing system occurred. (*See* Doc. No. 17, at 2.)

### A.      The Plaintiff's Expert Report

As part of the claim process, Helping Hand submitted to Erie a "detailed inspection report and moisture test from a HAAG Certified Commercial Roofing Inspector." (Doc. No. 33 ¶ 15.) The inspector who prepared the report, Steve Prosser, an engineer, was hired to inspect the roofs and to provide an expert opinion in the case. Helping Hand disclosed Prosser as an expert witness (*see* Doc. No. 50-1, at 3) and provided an expert report dated January 30, 2020 based on inspections that took place on January 12 and 20, 2020. (*See* Doc. No. 50-9, Roof Storm Damage Inspection Report ("Prosser Report") at 1).[1]

The Prosser Report identifies the "goal of the inspection" as "to determine and report on damage" to the roofs and "advise proper corrective action plans." (*Id.*) Prosser opined that the roofs, covering 94,000 square feet, displayed visible hail strike damage. He explained that the "spatter" patterns from hail strikes on the roof indicated that the hail strikes had occurred within the past two years, but the majority of the spatter was "not faded and appears fresh and unoxidized indicating the majority of the hail strikes happened within the past year." (*Id.* at 6.) He acknowledged that a "small portion of the hail [damage] may be close to 2 years old." (*Id.*) Prosser

---

[1] The defendant, confusingly, provided multiple copies of the same document in fragmented and disjointed pieces. A complete copy of the Inspection Report is located at pages 8–22 of Doc. No. 50-9. The court refers to the report by the pagination employed by its author.

also found damage to other structures ancillary to the roof, including "HVAC fins," gutters, downspouts, metal vent caps and parapet caps, and a decorative square cupola on one of the roofs. (*Id.* at 7, 8.) He also found moisture intrusion into the insulation below the metal roofs. His opinion is that complete replacement of "all roofing materials . . . including under-membrane insulation, metal panels, and fasteners" is required. (*Id.* at 9.)

During his deposition, the defendant asked Prosser to confirm that his Report did not attribute hail damage "to any specific date." (Doc. No. 57, Prosser Dep. 32.)[2] Prosser agreed, while noting that he was able to "identify that the hail had occurred, to a reasonable degree of engineering certainty, within the last year . . . based on spatter." (*Id.*) He explained that "spatter essentially blows off all grime and oxidation from a certain area," thus leaving a clean spot, but that "over a period of time, that grime and dust and dirt and slight mottling, changing colors, comes back." (*Id.* at 67.) In his experience, "in the South . . . and especially in an area such as Smyrna where there's heavy industry all around," the clean "spatter" pattern left by hail "does not stay much over a year," and the fact that the spatter pattern on the plaintiff's roofs appeared "fresh" meant that it had been struck by hail within the past six to nine months. (*Id.*)

Defense counsel asked Prosser if he had done any weather data research in this case. Prosser responded that he initially did "basic weather data search" but did not mention it in his Report, because he was "asked to provide an analysis of the damage and an approximate timing of the damage." (*Id.*) More specifically, he was asked to see if "there were indications that the hail that we found had occurred within the past year." (*Id.* at 36.) He acknowledged that, in his Report, he did not attribute the damage to "any specific storm date." (*Id.*) Since preparing his Report,

---

[2] Prosser's deposition transcript, with exhibits, was attached to the plaintiff's Response to the defendant's Motion to Exclude, but not as a separately filed exhibit. The court will cite to Prosser's deposition by its original page numbers rather than those assigned by CM/ECF.

however, he had gone back to look at weather data and could identify "what would be, in [his] opinion, the mostly likely date with engineering certainty," though he had not supplemented his Report with that information. (*Id.* at 37.)[3]

The plaintiff questioned Prosser further about the additional weather data on which he relied to identify the most likely date on which the hail damage he witnessed had occurred. Prosser explained that plaintiff's counsel asked him to review a June 2019 Local Climatological Data Daily Summary ("LCD Summary") from weather records maintained by National Centers for Environmental Information ("NCEI") and certified by the U.S. Department of Commerce.[4] (Prosser Dep. 83.) Prosser testified that he typically relies on this type of publicly available weather data to provide opinions like the one in this case. (Prosser Dep. 66.)

The LCD Summary indicates that hail occurred at the Smyrna Airport, four miles away from the plaintiff's property, at 19:17 hours on June 26, 2019. (Doc. No. 52-6, at 11, 27;[5] *see also*

---

[3] Prosser acknowledged that the district court's opinion in *Hayes Outdoor Media, LLC v. Southern Trust Insurance Company*, 1:20-cv-01213-STA-jay, 2021 WL 5746678 (W.D. Tenn. Dec. 2, 2021), which granted a motion to exclude Prosser's expert opinion in an unrelated case and about which Prosser learned in early January 2022, influenced his decision to conduct additional weather-related research prior to his deposition. (*See* Prosser Dep. 41–42.)

[4] The page heading for the Local Climatological Data Summary, though partially obscured in the copy produced by the plaintiff, appears to say "Department of Commerce, National Oceanic and Atmospheric Association, National Environmental Satellite, Data, and Information Service" on the top left and "National Centers for Environmental Information" on the top right. Neither party explains the relationship among the entities, but the court's own research indicates that the NCEI is a division of the National Oceanic and Atmospheric Association ("NOAA") and that NOAA is a division of the U.S. Department of Commerce. *See* https://www.noaa.gov/ and https://www.ncei.noaa.gov/ (last accessed April 6, 2022).

[5] The LCD Summary for that date and time states: "TS:7 GR:7 RA:02 | RA TS TS HAIL | RA SH." (Doc. No. 52-6, at 11.) The LCD "Dataset Documentation" attached to the Summary explains that the weather reported at any given time is recorded in the order of the type of observation, whether automatic ("AU" or "AW") or "manually (MW) by human observation." (*Id.* at 27.) "AU elements are listed first and followed by '|' and followed by AW elements. After the AW elements there will be another '|' followed by the MW elements (e.g.'-RA:02 | RA:61 | RA:61')." (*Id.*) The Dataset Documentation explains that "RA:02" means rain, "GR:07" means "Hail," and "GS:08" indicates "Small Hail and/or Snow Pellets." (*Id.* at 30.) The Dataset

---

Prosser Dep. 84–85.) The LCD Summary was independently produced by the plaintiff with its Supplemental Response to Defendant's Request to Produce. (*See* Doc. No. 57, at 167–202.) Prosser also testified about the distance of the plaintiff's property from the airport and the direction in which the prevailing winds were blowing during the storm in question. Based on all of this information, he believed that the path of this hailstorm was "likely to have crossed over the . . . subject property" on June 26, 2019. (Prosser Dep. 66.) Prosser stated that the LCD Summary was "primarily" how he determined that "the most likely date, based on engineering levels of certainty," on which damaging hail struck the roofs was June 26, 2019. (*Id.*)

### B.     The Defendant's Expert

At some point after Helping Hand retained Prosser, Erie retained the services of Richard Warren of Donan Engineering to provide his opinions regarding the plaintiff's claim of damage to the roofs. Warren inspected the roofs on January 17, 2020 and provided a report dated January 23, 2020. (Doc. No. 52-2 ("Warren Report").)

The Warren Report cites and refers to weather data upon which Warren relied for his opinion that there was no significant hail in the vicinity of the plaintiff's property during the coverage period. He states:

> Historical weather data for the Rutherford County, Tennessee, area was reviewed for June 20, 2019, through July 4, 2019, using the National Oceanic and Atmospheric Administration's (NOAA) Storm Prediction Center (SPC). Weather data for the entire year (2019) was reviewed using the Storm Event Database (SED). The SPC reports tornadoes, hail (i.e., 1-inch diameter and larger), wind damage, and wind events (i.e., 58 miles per hour and greater) throughout the continental United States. The SED nor the SPC reported hail during this timeframe.

Documentation does not define by diameter what distinguishes "hail" from "small hail." (*Id.* at 30.)

(Warren Report 3[6] (citing Storm Event Database, https://www.ncdc.noaa.gov/stormevents; Storm Prediction Center, https://www.spc.noaa.gov/exper/reports/?&all&date=20190703).)[7]

Warren documented the presence of both spatter marks[8] and dents caused by hail on the roofs. According to Warren, 1/2-inch spatter marks, corresponding with 3/4-inch-diameter hail impact, indicate that hail "could have fallen as recently as six months prior to this study or more." (*Id.* at 6.) He acknowledges that the hail "reported June 27, 2019 [sic], corresponds with the spatter marks" and, moreover, that hail of less than one inch in diameter is "often not reported by the SPC." (*Id.*) He also opined, however, that the "hail that has impacted the roof in the past 6 months did not create the dents in the metal roof." (*Id.*) He explained that, in his opinion, the deepest dents were not accompanied by discernable spatter marks, meaning that the roofs did not incur hail damage during the policy coverage period. Rather, any hail-related dents on the roof were caused by one-inch-diameter hail that occurred "prior to the current ownership."[9] (Warren Report 6.) In addition, according to Warren, these dents were "inconsequential to the performance and longevity

---

[6] The court cites herein to the pagination used by the Report, rather than to the CM/ECF pagination.

[7] Warren testified in his deposition that the SED and SPC are divisions of NOAA. (Doc. No. 52-3, Warren Dep. 45.)

[8] Similarly to Prosser, Warren explained that:

[c]lean spots, commonly referred to as splash marks or splatter marks, are off-color spots on weathered surfaces that are an indication of a hailstone impact but not necessarily of hail damage. Clean spots occur when hail impacts a weathered surface, essentially cleaning away the dirt, oxidation, or other weathering to reveal the original surface color at each impact point. These spots are temporary and will return to their weathered color, typically within 6 to 24 months depending on the surface and weather conditions.

(Warren Report 4.)

[9] In the "Description of Property" section of his Report, Warren noted that property records demonstrated that the building had last sold on March 22, 2019. (Warren Report 1.)

of the roof covering" and did not "diminish the functionality of the roof covering." (*Id.* at 6–7.) As a result, he concluded, "replacement is not warranted." (*Id.* at 7.)

## II.     STANDARD OF REVIEW

Both parties seek to exclude the opposing party's expert witness, arguing that their opinions do not meet the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

On a motion to exclude, the party offering an expert's opinion bears the burden of establishing the admissibility of that opinion by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Federal Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007).

"Parsing the language of the Rule," the Sixth Circuit has concluded that "a proposed expert's opinion is admissible, at the discretion of the trial court," if (1) the proposed witness is "qualified by 'knowledge, skill, experience, training, or education'"; (2) the testimony is "relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue'"; and (3) the testimony is "reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed. R. Evid. 702.)

In determining whether testimony is reliable, the court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court identified a non-exhaustive list of factors that may help courts in assessing the reliability of a proposed expert's opinion, including: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592–94. The *Daubert* factors "are not dispositive in every case and should be applied only where they are reasonable measures of reliability of expert testimony." *Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (internal quotation marks and citation omitted). At the same time, "rejection of expert testimony is the exception, rather than the rule." *Scrap Metal Antitrust Litig.*, 527 F.3d at 530. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## III.    THE DEFENDANT'S MOTION

Erie argues that the court should exclude Prosser's opinions that (1) hail caused damage to the roofs during the policy coverage period; (2) hail strikes caused water infiltration into the buildings within the policy coverage period; and (3) the roof must be replaced in its entirety.

### A.    Opinion that Hail Damaged the Roofs During the Policy Coverage Period

Under Tennessee law, the insured has the burden of demonstrating that a covered loss occurred. *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 22 (Tenn. Ct. App. 2002). And, under the policy at issue here, for the loss to be covered, the damage must have occurred during the policy coverage period. (*See* Doc. No. 1-3, at 51 ("This policy applies to losses that occur during the policy period.").)

Regarding Prosser's first opinion, Erie argues that the conclusion that hail strikes occurring within the policy coverage period caused the damage is unreliable, because, although Prosser's opinion is that recent hail (within a year of his inspection) caused the "spatter" patterns he saw on the roof, his deposition testimony shows that "there is no scientific or reliable basis for his conclusions." (Doc. No. 50, at 6.) The defendant's argument, reduced to its essence, is that Prosser simply presumes that a hail storm occurred on June 26, 2019 that caused hail damage to the roofs, but his assumption is not based on sound or reliable evidence and, as a result, his testimony is not "based on sufficient facts or data" to be admissible. Fed. R. Civ. P. 702(b).

More specifically, the defendant argues that Prosser does not profess to have independent knowledge about when the storm that caused hail damage occurred, did not interview anyone with such specific knowledge, and "offered no specific date or time in his expert disclosure. (*Id.* at 6–7.) He did not proffer a specific date on which a damage-causing storm occurred until his deposition, and, even then, he relied "only on weather data from an airport some three to four miles away from the insured location." (*Id.* at 7.) The defendant contends that Prosser "did not review this weather data in preparing his report" and, instead, reviewed it for the first time just prior to his deposition, during which he "revealed new opinions that were not contained" in his expert disclosures. (*Id.*) In his actual Expert Report, he does not rely on weather data or "attempt in any way to tie the damage to a specific date of loss" and instead "merely opines that the hail damage occurred within the 'past year' or maybe within a couple of years." (*Id.*) Because his observations were made in January 2020, his opinion simply means that "the storm that caused the damage he observed could have taken place at any time between January 12, 2018 and the date of his inspections." (*Id.*) And, because the policy did not go into effect until April 2019, the defendant concludes that Prosser's opinions "do not provide a reliable basis upon which to trigger the initial

insuring agreement of the policy. At best, his opinions will require a jury to speculate as to the date of the alleged storm damage and whether it occurred during the policy period at issue in this case." (*Id.*)[10] According to the defendant, the court should conclude that Prosser's opinions will not assist the trier of fact in determining whether damage occurred during the policy coverage period and, therefore, should exclude Prosser's opinions altogether. (*Id.* at 8.)[11]

In Response, the plaintiff argues, in essence, that Prosser's opinions are supported by facts and evidence that the plaintiff can introduce at trial, that he may express an opinion based on facts that he presumes, but does not know, to be true, and that other evidence in the record, aside from Prosser's Expert Report, will establish the date of the hail storm that caused the roof damage.[12] It argues that the defendant remains free to cross examine Prosser as to the factual basis for his opinions.

---

[10] In a footnote, the defendant adds, "Mr. Prosser's opinions regarding the 'date' of the alleged storm should be stricken as they were proffered for the first time during his deposition and based on weather data that he did not rely upon in his report that was the basis of his expert disclosure." (Doc. No. 50, at 7 n.3.) The defendant does not provide legal support for this argument or include it in the main body of its Memorandum. The court, therefore, rejects it.

[11] In what appears to be a throw-away argument, the defendant also asserts that Prosser's "attempt to distinguish 'recent' hail from 'older' hail is not based on any scientific or industry standard information." (Doc. No. 50, at 7.) Although Prosser conceded that the published, peer-reviewed research data "say[] one to two years," Prosser testified, based on his observations and experience, that, "in the South" where there is a lot of sun, the spatter patterns caused by hail strikes "start[] fading substantially" "within six to eight months." (Prosser Dep. 62.) The court finds that Prosser's opinion is adequately supported.

[12] The plaintiff's Response is confusing and difficult to follow, as it repeatedly—but not always—refers to Erie as the "plaintiff" and itself as the "defendant." (*See, e.g.*, Doc. No. 57, at 1 "The plaintiff believes that Prosser's opinions . . . were untimely and not sufficiently disclosed. The plaintiff believes that Prosser's opinions stated in his discovery deposition resulted in an 'ambush.'"); *id.* at 2 ("The defendant's 26(a)(2)(b) disclosure statement states that Prosser would testify consistently with his report . . . ."); *id.* ("The certified weather data attached as Exhibit 3 to Prosser's discovery deposition was independently disclosed to the plaintiff . . . .").)

The defendant's motion is premised primarily upon *Hayes Outdoor Media*, in which the district court granted the defendant's motion to exclude Prosser's expert testimony that a hailstorm that took place on one of two dates in June 2019 caused the hail damage that he observed on the plaintiff's roof. In that case, the court first noted that there was no direct evidence of hail at the location of the plaintiff's building—such as "eyewitness testimony of seeing hail at the property on one of the June 2019 storm dates." *Haynes Outdoor Media*, 2021 WL 5746678, at *3. The plaintiff had "historical weather data to show that hail was recorded in Jackson, Tennessee, on two different dates in June 2019" but "no evidence that either hailstorm produced hail at the subject property, other than vague recollections from one of the building's tenants about seeing hailstones outside the building at an undetermined point in the past." *Id.* Regarding circumstantial evidence, the court found that Prosser simply assumed that a storm had produced hail at the subject location on June 17, 2019, based on his own and his client's independent review of "unspecified online sources." *Id.* The court expressly recognized that it was acceptable for an expert to rely on assumptions of this sort, "as long as the proponent of the opinion testimony can fill in the gaps"— that is, if the party is able to "introduce other evidence establishing the facts assumed by the expert." *Id.* at *4 (quoting *Williams v. Illinois*, 567 U.S. 50, 57 (2012)).

"The problem in [that] case," however, was that the plaintiff "cited no other evidence to take care of the necessary gap-filling." *Id.* Instead, it "merely adduced evidence that hail was recorded in Jackson, Tennessee generally," but no evidence that the plaintiff's property "was actually in the path of one of the June 2019 hailstorms." The court concluded that there was "no evidence, direct or circumstantial, that there was hailfall at Plaintiff's property in June 2019, much less hail that damaged the building's roofing system." *Id.* And, as a result, the court further concluded that Prosser's "opinion tracing the hail damage to a specific date in June 2019 lacks a

reasonable foundation." *Id.* While the court acknowledged that "admissible opinion evidence often involves 'some degree of speculation,'" the proffered expert opinion in that case, the court found, was not "based on sufficient facts or data and is not the product of reliable methods" and, as a result, was "too speculative to meet the reliability standard for opinion testimony." *Id.* (quoting *United States v. Lang*, 717 F. App'x 523, 535 (6th Cir. 2017)).

This court, of course, is not bound by *Hayes Outdoor Media,* and, in any event, the facts of this case are sufficiently different that *Hayes* is not persuasive authority. For several reasons, the court finds that Prosser's opinion in this case rests on firmer ground. First, the roofs in question here are metal roofs, unlike the roof at issue in *Hayes Outdoor Media*. Because they are metal roofs, Prosser was able both to ascertain that hail strikes had occurred—causing the spatter marks—and to identify with some degree of certainly a date range within which the hail occurred. Although the defendant contests Prosser's opinion in that regard as inconsistent with peer-reviewed data, the court finds that Prosser's lengthy experience and expertise permit him to opine as to the date range during which the damage occurred, and the defendant remains free to vigorously cross-examine him on that topic.

Second, the plaintiff can point to some "gap fillers" that support Prosser's assumption as to when the hail damage occurred—in particular, evidence in the form of the LCD Summary from the NCEI that establish that hail occurred at the airport four miles away from the plaintiff's property on the day in question, which was independently produced to the defendant by the plaintiff with its Supplemental Response to Defendant's Request to Produce (*see* Doc. No. 57, at 167–202). Prosser also testified about the distance of the plaintiff's property from the airport and the direction in which the prevailing winds were blowing during the storm in question, further substantiating his assumption that hail occurred at the plaintiff's property on June 26, 2019. In

addition, as the plaintiff points out, the defendant's expert also accepted as a given that a hail event had occurred at the plaintiff's property around June 26, 2019—he just disagreed with Prosser as to whether that hail caused dents or any other form of damage to the plaintiffs' roofs. Warren, in fact, testified that it was "more probably true than not true that hail struck the roofs at issue on June 27th of 2019." (Doc. No. 52-3, Warren Dep. 51–52.)

To be sure, the evidence on which the plaintiff relies to establish that hail occurred at its property on June 26, 2019 is quite thin, but, in this instance, the weaknesses in the plaintiff's case are fodder for cross-examination rather than grounds for exclusion of the proffered expert testimony altogether. The defendant's Motion to Exclude, therefore, will be denied, insofar as it seeks the exclusion of Prosser's testimony that hail strikes occurring on June 26, 2019, within the policy coverage period, damaged the plaintiff's roofs.

**B.    Opinion Regarding Water Intrusion**

Next, the defendant objects to the introduction of Prosser's opinion that hail strikes during the policy coverage period caused water infiltration into the building.

In his Report, Prosser indicated that "rust in the hail strikes" indicated moisture intrusion. (Prosser Report 9.) He also conducted "moisture intrusion analysis," the result of which "confirm[ed] the presence of moisture in the roofing assembly. . . requiring full replacement of all roofing components and moisture or rust mitigation of remaining structural components before installation of new roof." (*Id.*)

During his deposition, however, Prosser objected to a question from defense counsel about why he had taken photographs of a prior repair if his goal was to "find an association of moisture from hail intrusion." (Prosser Dep. 53.) Prosser stated: "[Y]our question is incorrect when you say we were out there trying to find moisture from hail intrusion." (*Id.*) Rather, his objective was to do "a damage assessment of the roof . . . overall," which included "determining if there was

moisture trapped . . . in between the metal panels in [the] insulation." (*Id.*) He confirmed that his analysis of the roof showed "moisture trapped in the under-membrane insulation at high levels" (*id.* at 55) but that his analysis did not necessarily attribute that moisture to the hail damage that occurred on June 26, 2019. (*Id.*) Rather, it was just a factor that would have to be taken into account as part of a comprehensive "corrective action plan" to repair the roofs. (*Id.* at 55–56.) He further confirmed that he did not "find any location where [there was] an actual hole from hail that went through the roofing material and would allow water to go in." (*Id.* at 91.) Rather, his opinion was that the hail strikes had damaged the metal roof panels "to the extent that the useful life of the roof has been compromised," thus requiring complete replacement. (Prosser Report 9.)

The defendant argues that Prosser's opinion regarding moisture intrusion should be excluded, both because he fails to establish that hail damage occurred during the policy coverage period, as discussed above, and because he does not actually attribute the moisture intrusion to hail damage (much less to hail damage occurring within the policy coverage period). The plaintiff's Response does not actually address this argument, and the court finds that Prosser's testimony regarding moisture intrusion, which he conceded is not associated with hail damage, must be excluded. In this respect, the defendant's Motion to Exclude will be granted.

### C. Opinion that Replacement of the Entire Roof Is Required

Prosser opined that "complete replacement of all roofing materials . . . including under-membrane insulation, metal panels, and fasteners" was required, because the "metal panels on the building have been damaged by the hail strikes to the extent that the useful life of the roof has been diminished significantly and the water shedding ability of the roof has been compromised, as seen by the high numbers of hail strikes identified, the rust in the hail strikes[,] evidence of moisture intrusion and degradation of the panels. This level of damages requires full replacement of the metal roofing panels." (Prosser Report 9.)

The defendant argues that Prosser's opinion that complete replacement of the roof is necessary must be excluded, because he has offered no admissible evidence that a specific storm occurring within the policy coverage period caused hail damage or that hail strikes caused water intrusion. (Doc. No. 50, at 9.) As a result, it argues, Prosser's opinion regarding the need for complete replacement of the entire roofing assembly is "merely unreliable speculation." (*Id.*)

The plaintiff does not respond specifically to any argument regarding water intrusion. While Prosser will not be permitted to testify that water intrusion has already resulted from the hail strikes, the court nonetheless finds that Prosser's opinion that replacement of the metal panels is required is reasonably premised upon his finding that hail damage to the roof has diminished the useful life of the roof. The defendant will have the ability to cross-examine Prosser as to that conclusion. In this respect, the defendant's Motion to Exclude will be denied.

## IV. THE PLAINTIFF'S MOTION

Helping Hand argues that: (1) Warren's opinion that the hail that caused the dents on the roof occurred at some point prior to the plaintiff's purchase of the Property must be excluded as "speculative" and "unreliable" (Doc. No. 52, at 4, 5); (2) Warren's opinion that the hail strikes that occurred on June 27, 2019 [sic] were less than an inch and "only 3/4 of an inch or less" must be excluded, because it is based on unauthenticated and "uncertified weather data" that contradicts the "certified weather data" presented to him during his deposition (*id.* at 7, 8); and Warren's opinion that the hail that fell on June 26, 2019 did not cause physical damage to the roof must be excluded, because Warren "failed to measure the thickness of the metal roofing material" (*id.* at 8).

### A. Opinion that the Hail Dents Precede the Policy Coverage Period

Regarding Warren's opinion that the hail-related dents on the roof pre-date the policy coverage period, the plaintiff insists that Warren "failed to proffer any evidence that the claimed

hail damage caused by 1 inch hail occurred prior to the present ownership" and "does not independently have any idea when the storm that purportedly caused the larger dents in the roof had occurred in relation to the policy period and/or the current ownership." (*Id.* at 5, 6.)[13] The plaintiff contends that, because Warren does not attempt to pinpoint a date on which the hail storm causing the dents occurred, his opinion is subject to exclusion as based solely on guess or speculation and as having no reliable basis in fact.

In response, the defendant argues that, unlike the plaintiff, it does not have the "burden of showing that hail of a certain size caused damage on a certain date," and, therefore, that its expert has no obligation to present historical weather data to prove that the hail dents on the roofs occurred on a certain date. (Doc. No. 53, at 2.) Rather, in rebutting the plaintiff's claim, the defendant, through Warren, must only show that "the existing evidence of hail [was] not the result of the storm of June 2019," as the plaintiff claims. (*Id.*)

The court agrees that Warren has no obligation to pinpoint a date on which he believes the hail that caused dents in the roofs took place—or even that a single hail event caused the dents. To prevail in this case, the defendant does not have to prove when the dent-causing hail storm(s) occurred; it simply must persuade the jury that the event(s) did not happen during the policy coverage period. Thus, as long as Warren's opinion has a "reliable basis in the knowledge and experience of the discipline," *Daubert*, 509 U.S. at 592, it is admissible. Warren's opinion regarding the age of the dents is based on his observation that the dents were not accompanied by spatter patterns, which, in his opinion, take a minimum of six months to two years to fade. This

---

[13] The plaintiff also contends that Warren "has no information in his report as to when the current ownership commenced as his report only reflects that the building last sold on March 22, 2019." (Doc. No. 52, at 3.) Clearly, considered in context, Warren's statement that the detected hail dents occurred "prior to the present ownership" means "prior to the date of the last recorded sale in March 2019." This argument has no merit.

led him to conclude that they were more than six months old and, therefore, that they predated the June 26, 2019 date the plaintiff had pinpointed as the date on which the damage occurred. Warren's failure to pinpoint an alternative date is simply immaterial and does not render his opinion unreliable or speculative.

### B.     Warren's Opinion Regarding the Size of the Hail that Occurred in June 2019

Second, the plaintiff argues that Warren's opinion that the hail strikes that occurred in June 2019 were less than an inch in diameter should be excluded. The basis for this argument is that Warren relied on "unauthenticated" SPC and SED records that reported no hail in Rutherford County for the two-week period around the date the plaintiff had pinpointed as the date on which the hail damage to its roofs occurred. Warren explained that, in his experience, the SPC and SED records he cites only reported hail of one-inch diameter or greater. The plaintiff contends that Warren offers no support for that statement and that the data underlying an expert's opinion "requires authentication of some kind in order to satisfy the rules of evidence in *Daubert*." (Doc. No. 52, at 8 (citing *Lyngaas v. Curaden AG*, 992 F.3d 412, 413 (6th Cir. 2021)).) It also contends that the records on which Warren relied contradict the "certified weather data" the plaintiff presented to him during his deposition and that Warren "has no facts to rely upon that the hail reported in Exhibit 9 [the plaintiff's "certified" LCD Summary] was less than 1 inch [in diameter]." (Doc. No. 52, at 8.)

First, the plaintiff is simply incorrect that data underlying an expert's opinion must always be "authenticated."[14] Rather, the law is clear that an expert may rely on inadmissible evidence,

---

[14] In the case cited by the plaintiff, the Sixth Circuit did not hold that an expert must rely on "authenticated" data. Rather, it held that an expert's "'knowledge' be premised on 'good grounds based on what is known' and not on 'subjective belief or unsupported speculation.'" *Lyngaas*, 992 F.3d at 431 (quoting *Daubert*, 509 U.S. at 590). It went on to affirm the district court's determination that the plaintiff's expert's opinion in that case was "both unreliable under

including hearsay, "in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field." *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (citation omitted); *see also* Fed. R. Civ. P. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

Here, Warren identified and provided citations for the data on which he premised his opinion—data gathered and published by federal agencies that remains accessible online. His source—the NOAA—is the same as that of the plaintiff's "certified" LCD Report, and the plaintiff does not contend that experts in the field of assessing roofing damage do not regularly rely on governmental weather data. The plaintiff's expert, in fact, testified that he typically relies on this type of weather data, and the plaintiff has not even suggested that the data on which Warren relied is inherently unreliable. The plaintiff remains free to cross-examine Warren about the data and the conclusions he drew from the federal agency reports, but his reliance on them does not make his opinion inherently speculative or unreliable.

In addition, the plaintiff asserts that Warren has no facts to rely upon to support his assumption that the hail reported in the certified LCD Summary was smaller than one inch in diameter. (Doc. No. 52, at 8.) The plaintiff claims that this is merely an assumption. However, the assumption is not unreasonable, and Warren explained how he reached it. In particular, he explained that the hail splatter marks that resulted from relatively recent hail were not accompanied

---

*Daubert* and unpersuasive," in large part because the opinion was based on data the court had already concluded was unreliable, thus rendering the expert's opinion "speculative." *Id.*

by dents, thus substantiating his opinion that the hail storm that took place in June 2019 involved hail of small diameter.

Again, the plaintiff may vigorously cross-examine Warren as to this opinion regarding the size of the hail, but that opinion is not inadmissible as speculative or lacking evidentiary support.

### C.  Warren's Failure to Measure the Thickness of the Roofing Material

The plaintiff asserts, in short, that Warren's opinion that hail of less than one-inch diameter would not have damaged the roofs is "unreliable in light of the fact that Richard Warren had no idea of the thickness of the roof in question." (Doc. No. 52, at 8.) Once again, the plaintiff remains free to cross-examine Warren on this point, but his opinion that standard "coated sheet steel roofing" (*see* Warren Report 6) is not typically damaged by hail of less than one inch in diameter is reasonably based on his training and experience and is not inadmissible as a result of his failure to measure the thickness of the roofing material.

## V.  CONCLUSION

For the reasons set forth herein, the court will grant in part and deny in part the defendant's Motion to Exclude and deny the plaintiff's Motion to Exclude. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge